IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Case No. 23-cr-00169-2 |
| v. | ) | |
| | ) | Judge Sharon Johnson Coleman |
| | ) | |
| JAMES BAKER | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant James Baker's ("Baker") Federal Rule of Criminal Procedure 12(b)(3)(B)(v) motion to dismiss the indictment brought under 18 U.S.C. § 1960(a) for knowingly conducting, controlling, managing, supervising, directing, and owning all or part of an unlicensed money transmitting business affecting interstate and foreign commerce, while failing to comply with the money transmitting business registration requirements provided by 31 U.S.C. § 5330. In his motion, Baker argues that the charged conduct does not fall under the statutes because, at the time of the charged conduct, neither § 1960(a) nor § 5330 covered cryptocurrency transactions. The government opposes this motion. For the following reasons, Baker's motion is denied.

**Background**

The following background is drawn from the criminal complaint, Dkt. 1, the indictment, Dkt. 45, and the parties' briefing on this motion, Dkt. 128, 133, 138, and 139. On March 24, 2023, Baker and his co-defendants—Eldar Mata and Luis Gonsalez Lopez—were charged by criminal complaint with conducting, controlling, managing, supervising, directing, and owning all or part of an unlicensed money transmitting business in violation of 18 U.S.C. § 1960(a). As alleged by the government, between February 2019 and December 2020, the three defendants conducted a business in which Gonzalez Lopez would obtain cryptocurrency (bitcoin) from customers in Colombia for one price and transfer the bitcoin to Mata and Baker in the United States. Mata and Baker would then sell the

bitcoin for a higher price via an online exchange and send U.S. dollars back to Gonzalez Lopez in Columbia. Gonzalez Lopez would then use part of those dollars to fund subsequent purchases of bitcoin. The three would then split the profits earned from the business, which came in part from the price difference in the price of bitcoin in the United States and Colombia.

On August 17, 2023, Baker, Mata, and Gonzalez Lopez were indicted for violation of 18 U.S.C. § 1960(a). First enacted in 1992, at the time of the charged conduct, § 1960 stated in relevant part:

> (a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.
>
> (b) As used in this section—
>
> (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and— [. . .]
>
> (B) fails to comply with the money transmitting business registration requirements under § 5330 of title 31, United States Code, or regulations prescribed under such section; [. . .]
>
> (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier;
>
> [. . .]

"Money transmitting business" was defined under 31 U.S.C. § 5330(d)(1)(A) in 2001 as meaning any business which

> provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system

Fifteen months later, Baker filed the present motion to dismiss the indictment. Baker's principal argument is that because cryptocurrency did not exist in 2001 when Congress passed the statute defining "money transmitting business" in § 5330, Congress could not have intended that the statute cover those engaged in cryptocurrency transactions between February 2019 and December 2020, the period of the charged conduct. Noting that "funds" is not defined in either statute, Baker points to the fact that in 2021, Congress amended 18 U.S.C. § 5330 to include the phrase "value that substitutes for currency," an amendment that he argues was "expressly intended to cover cryptocurrency" and therefore indicates that cryptocurrency was not included in the definition of "funds" up to that point. (Dkt. 128 at *2.) And even if cryptocurrency was covered prior to the amendment, the ambiguity of the meaning of "funds" means that Baker could not have had notice that the charged conduct required him to register as a money transmitting business. Therefore, prosecuting him would violate his Due Process right to fair notice and the rule of lenity should apply.

In response, the government first argues that "an obvious and fatal problem" with Baker's argument is that, regardless of the purpose and effect of the 2021 amendment to include "value that substitutes for currency," the charged conduct still falls under § 1960 because it involved both

3

cryptocurrency and fiat currency.[1]  (Dkt. 133 at *8.)  The government further argues that despite the 2021 amendment adding the language "value that substitutes currency," cryptocurrency transactions still fell under the purview of the statute prior to the amendment because cryptocurrency constitutes "funds" under the ordinary meaning of the term.

After receiving the parties' briefings on the motion, the Court heard oral argument on the motion on February 21, 2025.

**Legal Standard**

Federal Rule of Criminal Procedure 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Specifically, Rule 12(b)(3)(B)(v) states that a motion to dismiss an indictment for failure to state an offense "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."

"Because a court's 'use[ ] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." *United States v. Firtash*, 392 F. Supp. 3d 872 (N.D. Ill. 2019) (Pallmeyer, J.) (quoting *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (quotation omitted).  Accordingly, when considering a motion to dismiss, the court must focus on the allegations, accepting all facts as true and viewing them "in the light most favorable to the government." *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009).  The court evaluates the allegations "on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Cox*, 536 F.3d 723, 726 (7th Cir. 2008).

Rule 12 also authorizes defendants to challenge the lawfulness of a prosecution on purely legal, as opposed to factual, grounds. *See United States v. Coscia*, 866 F.3d 782, 790 (7th Cir. 2017) (considering

---

[1] "Fiat currency" or "fiat money" refers to "all kinds of money that are made legal tender by a government decree or fiat" that is not backed by a physical commodity such as gold or silver.  "Fiat money," BRITTANICA MONEY, https://www.britannica.com/money/fiat-money (last visited Feb. 24, 2025).

defendant's contention that the indictment must be dismissed because the statute under which it is brought is unconstitutionally vague). A court may decide all questions of law raised in a motion to dismiss, including the constitutionality and interpretation of a federal statute. *See United States v. Sorich*, 523 F.3d 702, 706 (7th Cir. 2008).

**Discussion**

The Court appreciates Baker's contention that the indictment "relies on a byzantine assembly of statutes and regulations" and is premised on "complex" underlying facts involving "international cryptocurrency arbitrage through numerous financial transactions." (Dkt. 128 at *1.) And disposition of all of Baker's arguments would in fact require an exhaustive review of the legislative history of both § 1960 and § 5330 and an investigation of the extent to which the Court may rely on the U.S. Department of Treasury Financial Crimes Enforcement Network's interpretation of the statutes in promulgating regulations regarding cryptocurrency trade enforcement in the wake of the Supreme Court's opinions in *West Virginia v. E.P.A.*, 597 U.S. 697, 142 S. Ct. 2587, 213 L. Ed. 2d 896 (2022) and *Loper-Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024).

But the Court need not reach these arguments, as the charged conduct falls under § 1960 and § 5330 because it involved the transmission of funds—namely, fiat currency. Though its meaning is central to the question at issue, the term "funds" is not defined in either statute. As such, the Court must turn to its ordinary meaning to give the term definition. *See Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 566, 132 S. Ct. 1997, 2002, 182 L. Ed. 2d 903 ("When a term goes undefined in a statute, we give the term its ordinary meaning.") Here, the ordinary meaning of "funds" is "available pecuniary resources"—essentially, "something generally accepted as a medium of exchange, a measure of value, or a means of payment." *United States v. Murgio*, 209 F. Supp. 3d 698, 707–08 (S.D.N.Y. 2016).

While cryptocurrency transactions may be becoming increasingly popular among money transmitting businesses, cash—or "available pecuniary resources"—is still king. Viewing the

5

allegations in the light most favorable to the government, Baker's conduct involved the transmission of both cryptocurrency—purchased in Colombia and sent to the United States—and fiat currency—used to purchase bitcoin and subsequently transferred back to Colombia. The Sixth Circuit's opinion in *United States v. Iossifov* is instructive on this point. 45 F.4th 899 (6th Cir. 2022). There, between 2013 and 2018, a Romanian organization known as the Alexandria Online Auction Fraud Network ("AOAF Network") used fraudulent online advertisements on websites such as eBay, Craigslist, and Amazon to convince purchasers in the United States to send payments for high-value items that did not actually exist. *Id.* 907–08. After receiving the payments through gift cards and prepaid debit cards, AOAF Network money launderers in the United States converted the payments into bitcoin, which was then transferred back to Romania. *Id.* 908–11.

After a government investigation, the defendant was convicted on one count of conspiring to engage in racketeering activity in violation of the RICO Act, 18 U.S.C. § 1962(d), and one count of conspiring to launder money in violation of 18 U.S.C. § 1956(h), for exchanging bitcoin for fiat currency on behalf of the AOAF Network. On appeal, the defendant claimed that the money laundering statute did not criminalize his conduct because "Bitcoin is not currency" and "does not qualify as funds or a monetary instrument." *Id.* at 913. The Sixth Circuit swiftly disposed of that argument, holding that

> the AOAF Network did not merely operate within the world of digital currencies; rather, it used digital exchanges as a means through which to launder fiat currency. Indeed, the network induced victims to buy gift cards, debit cards, and money with American dollars; converted those dollar amounts to Bitcoin; used exchanges to transfer the Bitcoin abroad; and later

6

        turned the Bitcoin back to cash. On either end of the scheme, the network

        laundered fiat currency.

*Id.* at 913. Though Baker and his co-defendants are not charged with money laundering, as in *Iossifov*, the government's allegations demonstrate that fiat currency was transmitted on both ends of the trio's business transactions.

    Baker argues that *Iossifov* is "legally and factually distinguishable" from the present case for two reasons. One, *Iossifov* involved money laundering and whether bitcoin fell under the meaning of "funds" under § 1956, not an unlicensed money transmitting business under § 1960. And two, the AOAF Network held itself out to the public through advertisements and direct contact with purchasers, whereas "from Baker's perspective," the business was involved in a legal "cryptocurrency arbitrage investment strategy" that "did not involve the transfer of funds on behalf of the public, was not designed to deceive, and did not cause losses to any victim." (Dkt. 138 at *5–6.)

    Baker cites to no caselaw refuting the fundamental premise of the Sixth Circuit's holding—that the use of both fiat currency *and* cryptocurrency falls under "funds." Indeed, as applied to § 1960, an interpretation of "funds" that would require a money transmitting business to register under § 5330 if its activities involved only the transmission of fiat currency but removing that requirement if the activities involved the transmission of both fiat currency and cryptocurrency would open a loophole so wide as to defeat the statute's purpose of assisting law enforcement agencies in preventing money transmitting businesses from engaging in illegal activities, such as "sophisticated schemes to transfer large amounts of money which are the proceeds of unlawful enterprises." *See* Riegle Community Development and Regulatory Improvement Act of 1994, Pub. L. No. 103-325, § 408, 108 Stat. 2160 (1994); *see also Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S. Ct. 3245, 3252, 73 L. Ed. 2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"). The question of

7

whether *Iossifov* is a proper analogue would be closer if Baker's and his co-defendants' business consisted of solely cryptocurrency transactions. But even if that were the case, both the government and Baker concede that almost every federal court—including the Sixth Circuit in *Iossifov*—that has considered the question of whether cryptocurrency was covered under § 1960 and prior to the 2021 amendment of § 5330 concluded that bitcoin was indeed included in the ordinary meaning of the term "funds" as used in the statute.[2]

Nor does it matter that from Baker's perspective the transmissions were above the board, limited to his own businesses and not on behalf of the public. To constitute being "on behalf of the public," § 1960 requires only that the transmissions "occur within a transactional, business dealing or for a member of the broader community rather than within a personal or close relationship." *United States v. Han*, 637 F. Supp. 3d 527, 545 (N.D. Ill. 2022) (Wood, J.), aff'd, 105 F.4th 986 (7th Cir. 2024) (quoting *United States v. Singh*, 995 F.3d 1069, 1077–78 (9th Cir. 2021) (finding it "highly unlikely—indeed inconceivable—that Congress intended to limit § 1960 to money transferring businesses that used TV commercials, business cards or billboards")). And as the Seventh Circuit has held in the past, the government does not need to prove that "a defendant was aware of state licensing requirements or that he knew about the federal registration requirements" to fall under the statute's ambit. *United States v. Dimitrov*, 546 F.3d 409, 413 (7th Cir. 2008).

To the extent that Baker believes that there are other factual differences between the charges against the defendant in *Iossifov* and those set forth by the government in its factual allegations, a motion to dismiss the indictment without the benefit of factfinding through trial is not the proper

---

[2] *See, e.g.*, *United States v. Freeman*, 688 F. Supp. 3d 1, 10–13 (D.N.H. 2023); *United States v. Ologeanu*, 2020 WL 1676802, at *11 (E.D. Ky. Apr. 4, 2020); *United States v. Stetkiw*, 2019 WL 417404, at *2 (E.D. Mich. Feb. 1, 2019); *United States v. Mansy*, 2017 WL 9672554, at *1 (D. Me. May 11, 2017); *United States v. Murgio*, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016); *United States v. Budovsky*, 2015 WL 5602853, at *14 (S.D.N.Y. Sept. 23, 2015); *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014). *But see United States v. Petix*, No. 15-CR-227A, 2016 WL 7017919, at *6 (W.D.N.Y. Dec. 1, 2016) ("Because Bitcoin does not fit an ordinary understanding of the term 'money,' Petix cannot have violated Section 1960 in its current form.").

time to dispute these allegations. *See United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009) ("Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence."); *see also Firtash*, 392 F. Supp. 3d at 885 ("To the extent Defendants dispute the government's ability to prove their case, that is a matter for trial, not a basis for dismissal."). And given that the charged conduct unambiguously falls under the scope of § 1960, applying the rule of lenity is neither necessary nor appropriate in this case. *See Moskal v. United States*, 498 U.S. 103, 108, 111 S. Ct. 461, 465, 112 L. Ed. 2d 449 (1990) (explaining that the rule of lenity is reserved "for those situations in which a reasonable doubt persists about a statute's intended scope even *after* resort to the language and structure, legislative history, and motivating policies of the statute") (emphasis in the original) (internal quotations omitted).

**Conclusion**

For these reasons, the Court denies Defendant's motion to dismiss the indictment [128].

**IT IS SO ORDERED.**

Date: 2/28/2025            Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge